## Zomongo.TV USA Inc. v Capital Advance Servs., LLC

2024 NY Slip Op 33872(U)

October 29, 2024

Supreme Court, Kings County

Docket Number: Index No. 512735/2021

Judge: Leon Ruchelsman

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS : CIVIL TERM: COMMERCIAL 8
------------------------------------------x
ZOMONGO.TV USA INC. D/B/A ZOMONGO.TV
USA, JOCELYNE LISA HUGHES-OSTROWSKI and
JEREMY GENE OSTROWSKI,

                                    Plaintiffs,     Decision and order

          - against -                              Index No. 512735/2021

CAPITAL ADVANCE SERVICES, LLC,
                                    Defendant,      October 29, 2024
------------------------------------------x
PRESENT: HON. LEON RUCHELSMAN                       Motion Seq. #13


The plaintiff has moved pursuant to CPLR §2221 seeking to reargue a decision and order dated May 14, 2024 which denied the plaintiff's motion seeking to amend the complaint to add causes of action for trespass, conversion, and RICO claims. The defendant has opposed the motion. Papers were submitted by the parties and arguments held. After reviewing all the arguments this court now makes the following determination.

The facts have been adequately recorded in prior orders and need not be repeated here.


### Conclusions of Law

A motion to reargue must be based upon the fact the court overlooked or misapprehended fact or law or for some other reason mistakenly arrived at in its earlier decision (Deutsche Bank National Trust Co., v. Russo, 170 AD3d 952, 96 NYS3d 617 [2d Dept., 2019]).

The plaintiff asserts the court misapprehended the law

[*1]

concerning the meaning of an enterprise for RICO purposes. A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (18 USC §1961(4)). A RICO enterprise "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose" (Boyle v. U.S., 556 US 938, 129 S.Ct. 2237 [2009]).

Further, the RICO statute, §1962(c) describes the culpability of a 'person' conducting the affairs of the 'enterprise', clearing indicating they are two distinct entities (DeFalco v. Bernas, 244 F3d 286 2d Cir. 2001]). This distinctness requirement means "a corporate entity may not be both the RICO person and the RICO enterprise under section 1962(c)" (Riverwoods Chappaqua Corporation v. Marine Midland Bank, N.A., 30 F3d 339 [2d Cir. 1994]).

In Anglin Automotive LLC v. EBF Holdings LLC, 2024 WL 1118892 [S.D.N.Y. 2024] the court rejected RICO claims against a merchant cash funder similar to the allegations herein. The court explained that

"it is plain on the face of these allegations that each of these "enterprises" is nothing more than the respective MCA-Funder Defendant. Each "enterprise" consists merely of a corporate defendant and its corresponding John and Jane Doe owners, employees, and investors. See DeFazio v. Wallis, 500 F. Supp. 2d

2

[* 2]

197, 209 (E.D.N.Y. 2007) (finding that the distinctiveness requirement was not met where the plaintiffs described the RICO enterprise as the corporate defendant and named individuals alleged to be owners, officers, and shareholders of the corporate defendant and/or its affiliates). And these John and Jane Doe Defendants are merely alleged to be "carrying on the regular affairs" of the respective MCA-Funder Defendant. Riverwoods Chappaqua Corp., 30 F.3d at 344. Indeed, Plaintiffs assert that the MCA-Funder Defendants regularly disguise usurious loan agreements as bona fide merchant cash advance agreements to collect unlawful debts, see, e.g., id. ¶¶ 26, 86, 158, and further allege that the John and Jane Doe Defendants undertake the steps required to effectuate that aim, see id. ¶ 158. Nothing in the Complaint suggests that the John and Jane Doe Defendants, in setting up these agreements and collecting the resultant debts, acted beyond "the regular affairs of the corporation." See Riverwoods Chappaqua Corp., 30 F.3d at 344 (discussing with approval Atkinson v. Anadarko Bank & Trust Co., 808 F.2d 438, 440-41 (5th Cir. 1987), in which the Fifth Circuit found that the plaintiffs failed to meet the distinctness requirement in alleging an association-in-fact comprised of a bank, its holding company, and its employees, given the absence of any evidence that they "were associated in any manner apart from the activities of the bank"); Reed Const. Data Inc. v. McGraw-Hill Cos., Inc., 745 F. Supp. 2d 343, 352 (S.D.N.Y. 2010) (explaining in the context of the distinctness requirement that where the corporate defendant's agents are alleged to participate in the very racketeering activity alleged to constitute the corporate defendant's "regular way of conducting" its business, the agents' conduct cannot be considered as occurring "beyond the regular affairs of the corporation"). The Court thus finds that Plaintiffs have failed to plead a distinct enterprise" (id).

In this case the proposed amended complaint does not allege anything other than the corporate defendants and their owners, officers or investors. The proposed amended complaint does assert that defendant Davis and the John and Jane Doe investors "are persons that exist separate and distinct from the Enterprise" (see, Proposed Amended Complaint, ¶347 [NYSCEF Doc. No. 191]) however the remainder of the proposed amended complaint

3

[*3]

belies that legal requirement. The proposed amended complaint asserts that "Yellowstone" is the parent company of the defendants Capital Advance Services LLC and HFH Merchant Services LLC and that defendant Davis has an ownership interest in Yellowstone (see, Proposed Amended Complaint, ¶¶ 1,348,357 [NYSCEF Doc. No. 191]). Paragraph 349 of the proposed amended complaint states that "through his operation of Yellowstone, the RICO Persons solicit, underwrite, fund, service and collect upon lawful debt incurred by small businesses in states that do not have usury laws" (id). The next paragraph of the proposed amended complaint asserts that "Yellowstone, HFH, and CAS constitute an Enterprise (the "Enterprise") within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c)" (see, Proposed Amended Complaint, ¶350 [NYSCEF Doc. No. 191]). The proposed amended complaint does state that "Yellowstone is organized under the laws of New York and maintains officers, books, records, and bank accounts independent of Davis, the Investors, HFH, and CAS. HFH and CAS are wholly owned and controlled by Yellowstone" (see, Proposed Amended Complaint, ¶372 [NYSCEF Doc. No. 191]). However, Yellowstone, or any corporation for that matter, cannot possibly maintain books and records that are independent of its owners (cf., New Y-Capp v. Arch Capital Funding LLC, 2022 WL 4813962 [S.D.N.Y. 2022]). Thus, the proposed amended complaint cannot assert that Davis owns Yellowstone and "in his capacity as

4

[*4]

the day-to-day funder of the Enterprise, Davis was responsible for creating, approving and implementing the policies, practices and instrumentalities used by the Enterprise to accomplish its common goals and purposes including: (i) the form of merchant agreements used by the Enterprise to attempt to disguise the unlawful loans as receivable purchase agreements to avoid applicable usury laws and conceal the Enterprise's collection of an unlawful debt; (ii) the method of collecting the daily payments via ACH withdrawals; (iii) form Affidavits of Confession used by the Enterprise to collect upon the unlawful debt if the borrower defaults upon its obligations, and (iv) providing sworn testimony for enforcement of the unlawful debts and entry of judgment" (see, Proposed Amended Complaint, ¶358 [NYSCEF Doc. No. 191]) and then assert that the books of Yellowstone are independent of Davis. Thus, there is absolutely no distinctiveness between the persons and the enterprise itself.

Further, there can be no conspiracy to commit RICO if the substantive RICO claims are deficient (see, Haymount Urgent Care PC v. GoFund Advance LLC, 690 F.Supp3d 167 [S.D.N.Y. 2023, Nygard v. Bacon, 2021 WL 431 2581 [S.D.N.Y. 2021]).

Therefore, based on the foregoing, the motion seeking reargument to plead RICO claims is denied.

Turning to the next issue, the court denied the request to amend the complaint to assert causes of action for trespass and

[* 5]

conversion holding that CPLR §5240 was the exclusive remedy based upon an improper levy. Upon reargument the plaintiff asserts the causes of action alleged seeking trespass and conversion were really causes of action to recover attorney's fees and pre and post judgement interest respectively.

First, in another action between the parties the court held that Zomongo's request for attorney's fees making the motion required a plenary action (see, Decision dated May 4, 2022 in *Capital Advance Services LLC v. Zomongo.TV USA Inc.*, et al., Index Number 1229/2018, page 6 [NYSCEF Doc. No. 81]). That directive, which was limited to fees for making a motion has nothing to do with the proposed amendments sought here which seek far greater relief, namely defending a wrongful attachment. Further, to the extent the relief is the same, this action was filed on May 26, 2021, more than a year prior to the decision requiring Zomongo to file a plenary action. Thus, this lawsuit cannot serve as that plenary action since it existed prior to the mandate that such plenary action be filed. Moreover, it is curious Zomongo waited almost two years after the court instructed Zomongo to file a plenary action seeking such attorney's fees. More importantly, the cause of action seeking attorney's fees in the proposed amended complaint is designated as one for trespass. The plaintiff agrees that no tort claims can arise from an invalid levy and the plaintiff must resort to

6

remedies pursuant to CPLR §5240. Thus, the trespass cause of action contains eight paragraphs which describe that a trespass occurred upon the levy being declared void. Paragraph 313 of the proposed amended complaint does assert that "reasonable counsel fees incurred or expended in defending against a wrongful attachment are recoverable" (see, Proposed Amended Complaint, ¶313 [NYSCEF Doc. No. 191]). However, that single sentence in a much larger claim asserting trespass cannot transform the cause of action to one seeking attorney's fees. Thus, if the claim was simply for attorney's fees the pleading should reflect such straightforward relief. The plaintiff has not explained why it seeks attorney's fees under an umbrella of improper trespass claims.

Likewise, concerning the claim for conversion the plaintiff asserts it is merely seeking interest lost as a result of the improper levy. However, conversion is defined as "the value of the property at the time and place of conversion, plus interest" (Fantis Foods Inc., v. Standard Importing Company Inc., 49 NY2d 317, 425 NYS2d 783 [1980]). Thus, the tort of conversion that is foreclosed by the remedy provided in CPLR §5240 similarly forecloses any relief seeking interest.

In addition, Plymouth Venture Partners, II, LP v. GTR Source, LLC, 37 NY3d 591, 163 NYS3d 467 [2021] specifically stated that an "article 52 proceeding is the correct vehicle for

7

[* 7]

resolving claims based on collection efforts that are alleged to violate article 52" (id). The plaintiff insists that is true, however, not exhaustive, and once an Article 52 hearing has been concluded the plaintiff is free to pursue tort claims. However, Plymouth expressly rejected that approach. Plymouth held that whenever there were violations of the procedural requirements of Article 52 then Article 52 was the exclusive vehicle seeking relief. The court explained that "permitting an action based solely on the violation of requirements established by article 52 to proceed outside the mechanisms provided by article 52 would be inconsistent with the relevant statutory framework" (id). That remains true whether the other claims are sought before or after Article 52 remedies are achieved. Indeed, the timing of the other claims sought is really irrelevant. The court in Plymouth did leave open the possibility for tort claims but only when those were claims outside violations of the procedures of Article 52 (see, Plymouth, supra, Footnote 10). Where, as here, there are no such allegations, then Article 52 remains the exclusive remedy.

The plaintiff may pursue claims for attorney's fees if appropriate with a properly pled complaint in a plenary action. The merits of such a claim is not presently before the court. The claims that are pled are insufficient to assert attorney's fees.

8

[* 8]

Consequently, the motion seeking reargument is denied in all respects.

So ordered.

ENTER:

DATED: October 29, 2024
Brooklyn N.Y.

Hon. Leon Ruchelsman
JSC